NIGHT BOX
FILED

AUG 29 2000

CLERK, USDC / SDFL / WPB

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6211-CR-HURLEY

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| RABAH EL HADDAD | ) |
| | ) |

### APPEAL OF MAGISTRATE JUDGE'S
### DENIAL OF REQUEST FOR PRETRIAL DETENTION

The United States of America, by and through undersigned counsel, hereby files this appeal of the Magistrate Judge Bandstra's August 29, 2000, Order Denying the Government's Request for Pretrial Detention on Defendant RABAH EL HADDAD. On July 31, 2000, Defendant Rabah El HADDAD was arrested in San Jose, California. On August 1, 2000, a grand jury in the Southern District of Florida returned an indictment charging EL HADDAD with conspiracy to possess pseudoephedrine knowing or having reasonable cause to believe it would be used to manufacture methamphetamine, and two substantive counts of possession of pseudoephedrine, in violation of 21 U.S.C. 846 and 841(d)(2). On August 7, 2000, a detention hearing was conducted in the Northern District of California. After consideration of the testimony presented (by

way of proffer) and the argument of counsel, Magistrate Judge Patricia Trumbull determined that EL HADDAD was a risk of flight and ordered him detained. A copy of that order is attached as Exhibit 1. After the detention hearing, EL HADDAD waived removal and was transferred to the Southern District of Florida.

On August 24, 2000, EL HADDAD had his initial appearance in the Southern District of Florida before Judge Turnoff. On August 29, 2000, over the Government's objection, a second Pretrial Detention hearing was held. Magistrate Judge Bandstra denied the Government's Request for Pretrial Detention and ordered a $100,000 corporate surety bond with Nebbia, a $200,000 personal surety bond cosigned by Defendant's wife, his three brothers and their wives (if they are married), surrender of travel documents, waiver of extradition, electronic monitoring, curfew from 12:00 midnight until 6:00 a.m., maintain gainful employment, reside at his present address, and report to Pretrial Services once a week in person.

At that detention hearing before Judge Bandstra, the United States proffered that at the time of EL HADDAD's arrest in California, he was in possession of 220 pounds of loose pseudoephedrine pills, and that the 220 pounds of pseudoephedrine could be converted into approximately 154 pounds of methamphetamine valued at approximately $924,000. The United States also proffered that EL HADDAD had shipped the pseudoephedrine from South Florida to California and then traveled to California to make certain the

pseudoephedrine reached its intended destination - clandestine methamphetamine labs in California. The United States also proffered that when Mohammed Samhan, who is a codefendant with whom EL HADDAD shipped pseudoephedrine, was arrested, he had 144 pounds of loose pseudoephedrine in his residence. That amount can be converted into approximately 100 pounds of methamphetamine, valued at $600,000. On two other occasions EL HADDAD and Samhan shipped large quantities of pseudoephedrine to the West Coast. EL HADDAD also traveled to California and Oregon to make certain the two shipments of pseudoephedrine reached its intended destination.

Defendant should be held in pretrial detention. Section 3142(e) of the Bail Reform Act provides that a judicial officer shall order detention if he finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. See 18 U.S.C. § 3142(e). This section accords the judicial officer substantial latitude in determining whether pretrial detention is appropriate. United States v. King, 849 F.2d 485, 487 (11th Cir. 1988).

In passing the Bail Reform Act, Congress determined that drug offenders pose special risks of flight. King, 849 F.2d at 489 (statutory presumption that drug offenders pose special risks of flight). Indeed, the legislative history of the Bail Reform Act recognizes the

> increasing incident of defendants, particularly those engaged in highly lucrative criminal activities such as drug trafficking, who are able to make extraordinarily high money bonds, posting bail and then fleeing the country. Among such defendants forfeiture of bond is simply a cost of doing business. 1984 U.S. Code Cong. & Ad. News 3206-07.

In addition, the Act creates several rebuttable presumptions which the judicial officer must use in determining whether pretrial detention is warranted under the standard set forth in 3142(e):

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.). . .

18 U.S.C. § 3142(e). In order to trigger section 3142(e)'s rebuttable presumption, the government need not make a showing of probable cause independent of the grand jury's indictment. King, 849 F.2d at 487-488; United States v. Hurtado, 779 F.2d 1467, 1479 (11th Cir. 1985).

As to defendants charged with drug trafficking crimes, the statutory presumption of flight risk and danger to the community, even if rebutted by the defendant, retain evidentiary weight and must be considered along with all other relevant factors. King, 849 F.2d at 488 (even if "rebutted" presumption remains as an evidentiary finding militating against release); United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (presumption does

not disappear but instead retains evidentiary weight -- the amount depending on how closely the defendant's case resembles the congressional paradigm); United States v. Jessup, 757 F.2d 378, 380-86 (1st Cir. 1985) (presumption reflects Congress' finding that drug traffickers often have the resources and foreign contacts to escape to other countries).

EL HADDAD has been charged by way of indictment with conspiracy to possess pseudoephedrine knowing and having reasonable cause to believe that it would used to manufacture methamphetamine, and possession of pseudoephedrine. The conspiracy involves thousands of pounds of pseudoephedrine worth millions of dollars when converted into methamphetamine. If EL HADDAD is convicted, he is facing a maximum sentence of twenty years imprisonment. Thus, the government is entitled to the rebuttable presumption under section 3142(e) and the burden was on EL HADDAD to present evidence that he was not a risk of flight and danger to the community.

The term "dangerousness" as used in the Act has a much broader construction that might be commonly understood. King, 849 F.2d at 487 n.2. The concept of defendant dangerousness includes not only the danger of harm involving physical violence but also the risk that a defendant would continue to engage in drug trafficking. Id., quoting Report of the Senate Committee on the Judiciary, S.Rep. No. 98-225, 98th Cong., 2d Sess. (1984) U.S. Code Cong. &

5

Admin. News 3182, 3195-96.

EL HADDAD offered no evidence at the pretrial detention hearing that would rebut the presumption of dangerousness. The massive amount of pseudoephedrine involved in this case (thousands of pounds) points to the dangerous nature of EL HADDAD. The defendant also has significant ties to the Mideast where numerous family members still reside.

The statutory presumption has buttressed the pre-trial detention of defendants who are involved in major narcotics conspiracies who presumably have the resources and incentive to flee. Palmer Contreras, 835 F.2d at 18 (involvement in 195 kilo deal supported inference that defendants were connected to persons or an organization with great financial resources that could finance the defendants relocation).

Persons who engage in narcotics activity, according to Congress as articulated in section 3142(e), pose special risks of flight. Jessup, 757 F.2d at 385. These special risks are not outweighed by the mere presence of family or community ties. See United States v. Cardenas, 784 F.2d 937, 939 (9th Cir. 1986) (risk of flight warranting pre-trial detention despite family ties and history of prompt court appearance); United States v. Martir, 782 F.2d 1141, 1146-47 (2nd Cir. 2986) (likelihood of substantial imprisonment upon conviction creates incentive to flee); United States v. Diaz, 777 F.2d 1236, 1238 (7th Cir. 1985) (risk of flight

justifying pre-trial detention despite family ties and lack of prior criminal record as defendant faced a long prison sentence).

The defendant makes much of the fact that he has ties to the community. This fact, however, as noted by the legislative history of the pre-trial detention statute, is the least significant factor to be considered when making a determination concerning pre-trial detention.

> The Committee...notes, with respect to the factor of community ties, that it is <u>aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance and has no correlation with the question of the safety of the community.</u> While the Committee considered deleting this factor altogether, it has decided to retain it at this time. However, the Committee wishes to make it clear that it does not intend that a court conclude there is no risk of flight on the basis of community ties alone; instead, a court is expected to weigh all the factors in the case before making its decision as to the risk of flight and danger to the community.

S. Rep. No. 98-2255, at p. 24-25 (emphasis supplied).

When the presumption is considered in conjunction with all of the evidence presented to the magistrate, it is clear that pretrial detention for EL HADDAD is warranted. EL HADDAD is charged with a narcotics offense punishable by a term of imprisonment in excess of ten years. When he was arrested, agents seized almost 220 pounds of loose pseudoephedrine pills which EL HADDAD had shipped to California from South Florida. Because other loads of pseudoephedrine had been intercepted by law enforcement officials

and arrests were made, EL HADDAD wished to make certain the pseudoephedrine made it to its intended destination. Other shipments made by EL HADDAD from South Florida to the West Coast had been intercepted by law enforcement officials.

The government proved by clear and convincing evidence that EL HADDAD falls within that identifiable group of dangerous drug offenders which the Bail Reform Act of 1984 targeted. Since EL HADDAD would pose a threat to the community and a risk of flight if he were released, the magistrate judge should have ordered pre-trial detention. See United States v. Salerno, 107 S.Ct. 2095 (1987). A proper application of 18 U.S.C. §3142 mandates the pre-trial detention of the defendant. Accordingly, Magistrate Judge Bandstra improperly denied the Government's Request for Pretrial Detention.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
LAURENCE M. BARDFELD
Assistant U.S. Attorney
500 East Broward Blvd., #700
Ft. Lauderdale, Florida 33394
(954) 356-7255, Fax: 356-7228
Fla. Bar No. 712450

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed/hand-delivered this 29th day of August, 2000, to: Howard Srebnick, Esquire, 201 South Biscayne Boulevard, Suite 1300, Miami, FL 33131.

LAURENCE M. BARDFELD
ASSISTANT U.S. ATTORNEY

9

Case 0:00-cr-06211-DTKH    Document 83    Entered on FLSD Docket 08/30/2000    Page 9 of 9